Shorb v. Kinzie.

No. 11,606.

## SHORB v. KINZIE.

INSTRUCTIONS.—*Admissions.*—It is fatal error to instruct the jury that evidence of verbal admissions made some time ago are subject to imperfection and mistake, and should be cautiously received, because the party may not have expressed his own meaning, or may have been misunder-.stood, and the witness may not give the exact language, and thereby change the meaning; but admissions deliberately made against interest, and well understood, are entitled to consideration : nevertheless the jury are the exclusive judges of the weight of the evidence.

.SIGNATURE.—*Misconduct of Counsel.*—The genuineness of a signature was in issue by an answer under oath, purporting to be signed by the party, but this was not put in evidence, nor was there any evidence that the name was written by the party. In argument his attorney was permitted, over ·objection, to hand the affidavit and paper in dispute to the jury, that . they might judge of the handwriting by comparison, which they did. *Held*, that this was error.

From the Whitley Circuit Court.

*J. W. Adair* and *W. F. McNagny*, for appellant.

*W. Olds* and *H. S. Biggs*, for appellee.

BLACK, C.—This was an action brought by the appellee .against the appellant upon a promissory note executed by the latter to the former. Issues were formed, a trial of which before a jury resulted in a verdict for the plaintiff, on which .judgment was rendered, a motion for a new trial made by ·the defendant having been overruled. The overruling of this motion is assigned as error. The court gave the following instruction to the jury :

" There has been some evidence given of admissions by ·the plaintiff, and upon this branch of the case the law is that ·verbal admissions or statements, consisting of. mere repetitions of oral statements made some time ago, are subject to much imperfection and mistake, for the reason that the party making them may not have expressed his or her own meaning, or the witness may have misunderstood him or her, or, by not giving their exact language, may have changed the

meaning of what was said.   Such evidence should, therefore, be received by the jury with great caution.   But admissions deliberately made and well understood are entitled to your consideration, especially when made against a party's own interest.   The jury are the exclusive judges of the weight of the evidence."

Under *Newman* v. *Hazelrigg*, 96 Ind. 73, *Finch* v. *Bergins*, 89 Ind. 360, *Davis* v. *Hardy*, 76 Ind. 272, and *Garfield* v. *State*, 74 Ind. 60, we think this instruction must be held erroneous.   The last sentence in the instruction does not save the entire instruction from error.   It did not withdraw the preceding matter, often held by this court to be objectionable, but left it to control the judgment of the jury.

It was alleged in the answer, that when the note in suit became due, the plaintiff represented to the defendant that the former had lost it; that thereupon the defendant made full payment of the note to the plaintiff and took his receipt therefor, a copy of which was filed with the answer as part thereof.   To this the plaintiff replied, denying payment and denying that he ever executed said receipt.   This reply was verified by an affidavit signed " George Kinzie," and purporting to have been " subscribed and sworn to before " the clerk.   It is shown by bill of exceptions, that this affidavit was not read or introduced in evidence in the cause, " and the signature thereto was not admitted to be the plaintiff's genuine signature, unless the fact that said reply was filed as a reply in the case constituted an implied admission of such genuineness, but it was in no other way admitted or conceded that said signature was the genuine signature of plaintiff."

One of the plaintiff's attorneys, in his argument before the jury, handed said affidavit to the jury, with said receipt, which had been put in evidence by the defendant, and told the jury that the signature to the affidavit was the plaintiff's genuine signature, but that he had not signed the receipt; and said attorney asked the jury to compare said signatures, for the purpose of determining whether the plaintiff had

signed the receipt; and upon said request each juror examined said signatures and compared them for such purpose. To all this the defendant objected for the expressed reasons that said affidavit was not in evidence; that it was not a paper in the case; that the pretended signature of the plaintiff thereto was not admitted to be genuine; that the jury had no right to compare said signatures; that they could only look at the evidence in the case in reaching a verdict; but the court overruled the objection.

Comparison of handwritings is a mode of proof by which, if it be not carefully guarded, judicial tribunals are liable to great imposition. The relaxation of the rules concerning this class of evidence should never be so far extended as to permit the use of uncertain standards of comparison. While in this State we permit comparisons by experts, using as standards writings irrelevant to the case, we have not, as have the courts of some other States, permitted the establishing of the genuineness of such irrelevant papers by means of other evidence. We require that the irrelevant standard to be used by the expert shall be a writing the genuineness of which is admitted by the party adverse to the one offering to make the comparison; and in such case we do not permit the standard to be examined by the jury.

In thus allowing the use of irrelevant standards of comparison, we admit a class of evidence not allowed by the English common law. We also recognize what has been called an exception to the common law rule disallowing comparison of handwritings, in that where a writing admitted to be genuine is already in evidence for some other purpose, and has thereby become a paper subject to be examined by the jury, it may be used as a standard with which the jury may compare what purports to be a writing of the same person, the genuineness of which as such is in dispute in the case. Where the comparison may thus be made by the jury, they may make it either with or without the aid of experts. *Chance* v. *Indianapolis, etc., G. R. Co.*, 32 Ind. 472; *Burdick* v. *Hunt*, 43

Ind. 381; *Huston* v. *Schindler*, 46 Ind. 38; *Shank* v. *Butsch*, 28 Ind. 19; *Forgey* v. *First Nat'l Bank*, 66 Ind. 123; *Hazzard* v. *Vickery*, 78 Ind. 64; *Shorb* v. *Kinzie*, 80 Ind. 500. See, also, 1 Greenl. Ev., section 578; Whart. Ev., section 713; *Moore* v. *U. S.*, 91 U. S. 270; *Van Wyck* v. *McIntosh*, 14 N. Y. 439; *Miles* v. *Loomis*, 75 N. Y. 288; S. C., 31 Am. R. 470.

Our statute (section 364, R. S. 1881) provides that where a pleading is founded on a written instrument, or such instrument is therein referred to, such instrument may be read in evidence on the trial of the cause without proving its execution, unless its execution be denied by pleading under oath, or by an affidavit filed with the pleading denying the execution.

Whether such an affidavit of a party may be submitted by the adverse party to the jury for the comparison of handwritings, we need not here determine, and we do not decide.

A witness whose knowledge of a party's handwriting has been obtained by seeing him write for the purpose of showing his true manner of writing to the witness, with a view to his testifying, will not be permitted to testify his belief as to the genuineness of the signature in question. *Reese* v. *Reese*, 90 Pa. St. 89, S. C., 35 Am. R. 634, quoting Lord Kenyon's saying in *Stranger* v. *Searle*, 1 Esp. 14, "The defendant might write differently from his common mode of writing his name, through design."

In *King* v. *Donahue*, 110 Mass. 155, S. C., 14 Am. R. 589, where a general rule in relation to standards of comparison by the jury much less strict than ours was stated, it was held that a party was not entitled to write her signature in the presence of the jury for the purpose of its being compared with a signature purporting to be hers in evidence, the genuineness of which she denied. It was said: "The rule however seems to be that a signature made for the occasion, *post litem motam*, and for use at the trial, ought not to be taken as a standard of genuineness, and that the jury should not be troubled with the additional issue or question whether the signature so offered is written in a constrained and forced manner or not."

Shorb *v.* Kinzie.

The genuineness of the signature given as a standard of comparison by the appellee to the jury was not established in any manner, at least as against the appellant. As was said on a former appeal of this case (*Shorb* v. *Kinzie*, 80 Ind. 500), "A claim that a signature is genuine by a party who seeks to use it is no admission at all."

If such a signature as the one now in question can be assumed in any instance to be the genuine handwriting of the party whose signature it purports to be, and upon such assumption alone can be submitted to the jury as a standard of comparison, we think that a party can not be permitted, in denying in pleading the execution of an instrument, to make a specimen of handwriting to be used by himself on the trial of the cause as a standard by which the jury shall test the genuineness of the handwriting in dispute. To hold otherwise would be to invite imposition through a class of evidence which, at best and when most carefully guarded, is not very reliable.

But, if a party might be permitted during the introduction of the evidence to thus submit to the jury such a signature as an undisputed and undeniable standard of his ordinary handwriting, for the comparison therewith by the jury of the signature in issue, the adverse party would have the opportunity, under our rule, of introducing expert witnesses to aid the jury in further comparison ; and the submission to the jury made for the first time upon the argument after the close of the evidence, if in any view allowable, would deprive the adverse party of this privilege.

The judgment should be reversed.

P.ER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be reversed, at the costs of the appellee, and the cause is remanded for a new trial.

Filed Feb. 18, 1885.